Filed 2/24/15  In re M.V. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E061870 |
| Plaintiff and Respondent, | (Super.Ct.No. J253645) |
| v. | OPINION |
| J.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall and Cheryl C. Kersey, Judges.  Affirmed.

Jasmine Turner-Bond, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

1

Appellant J.V. (father) appeals from the juvenile court's summary denial of his Welfare and Institutions Code[1] section 388 petition regarding his daughter, M.V. (the child). We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On March 28, 2014, the San Bernardino County Children and Family Services (CFS) filed an amended section 300 petition on behalf of the child, who was approximately two weeks old at the time. The petition alleged that she came within section 300, subdivisions (a) (serious physical harm), (g) (no provision for support), and (j) (abuse of sibling). The petition included the allegations that the child's mother (mother)[2] caused multiple broken bones to the child's half-sibling, A.G., that the child was at substantial risk of abuse, and mother was currently incarcerated on felony child abuse and theft charges, thereby making her unable to provide care for the child. The petition further alleged that, on December 10, 2013, A.G. was found by the court to have been physically abused by mother. The court also found that father, who was mother's boyfriend, violently grabbed A.G.'s lower left arm and caused an acute right mid-radial fracture and right mid-ulnar fracture.

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] Mother is not a party to this appeal.

2

*Detention*

The social worker filed a detention report and stated that mother currently had an open CFS case regarding A.G., and that she gave birth to the child in March 2014. On March 5, 2014, the social worker and a public health nurse went to the hospital, which was being guarded by a police officer due to mother's incarceration. Mother stated that she had no plans to care for the child and that she wanted her placed with father's mother. Mother said she was aware that father was additionally responsible for physically abusing and neglecting A.G. Father was present, and he claimed paternity of the child and confirmed that he signed the birth certificate. He also requested that the child be placed with his mother. Due to mother's and father's significant physical abuse and neglect history regarding A.G., the social worker took the child into protective custody. The child was placed in a foster home on March 6, 2014.

The social worker further reported that, on December 11, 2013, A.G. was found by the court to have been physically abused by mother, and there was now a no contact order with regard to mother in place.[3] A.G. sustained 14 fractures in all four extremities. The court found that father violently grabbed A.G.'s arm, causing two fractures.

At a detention hearing on March 10, 2014, the court found a prima facie case to detain the child.

---

[3] We note that the amended section 300 petition alleged that the court made its findings on the date of December 10, 2013, while the detention report alleged the date of December 11, 2014. We assume the date in the detention report was in error, since the report itself was dated March 10, 2014.

*Jurisdiction/disposition*

The social worker filed a jurisdiction/disposition report on March 27, 2014, recommending that the court declare the child a dependent and deny both parents reunification services. Specifically, the social worker recommended that no services be provided to father pursuant to section 361.5, subdivision (b)(6).[4] The social worker reported that father admitted to the police that he could have caused the break to A.G.'s right arm. Father explained that he was frustrated with mother due to an argument. A.G. was in the playpen and started to cry. Mother yelled at father to get A.G., and father walked over to the playpen and used one hand to grab her. He said he felt something move inside her forearm when he grabbed her. Father admitted to grabbing and pulling A.G.'s arm with enough force to cause her injury. He and mother admitted knowing that A.G. was injured and in pain, but they did not attempt to seek medical help until her right arm was so swollen and incapacitated that it split open and was bleeding. Mother and father were arrested on October 31, 2013. Mother was escorted to the Central Detention Center, and father (who was a minor at the time) was issued a citation and released to his mother. On March 12, 2014, mother pled guilty to child abuse charges. Father's criminal charges were pending.

---

[4] Section 361.5, subdivision (b)(6), provides that reunification services need not be provided to a parent when the court finds, by clear and convincing evidence, that "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian."

The social worker interviewed father and mother and reported that neither of them demonstrated "a remote level of concern for [A.G.'s] welfare." The social worker observed that, "[d]espite the knowledge of the severe damage cause to [A.G.'s] medical, physical, and emotional health[,] neither parent showed empathy or remorse as they discussed the incidents . . . . Both parents appear[ed] more committed to each other than they [did] to accepting responsibility for their involvement in the injuries to [A.G.]" The social worker further opined that neither parent appeared mentally or emotionally capable of providing adequate care, protection or safety to the child, since they had not "sought any services to remediate their behaviors." Thus, the social worker stated that it would not be in the child's best interest to return her to their care.

A contested jurisdiction/disposition hearing was held on April 9, 2014. The court sustained the petition and declared the child a dependent of the court. The court found father to be the presumed father of the child. It then denied reunification services to both mother and father, pursuant to section 361.5, subdivision (b)(6), and further denied services to mother pursuant to section 361.5, subdivision (b)(7). The court also denied visitation, due to the severity of the injuries to the child's half-sibling. The court found it in the best interest of the child to consider termination of parental rights, and it set a section 366.26 hearing for August 7, 2014.

On June 14, 2014, CFS requested that the child be transitioned from foster care to the concurrent planning home of Mrs. C., who was the paternal grandmother of A.G.

5

A.G. was living with Mrs. C., and Mrs. C. was willing and able to adopt the child because she felt strongly that the siblings should be kept together.

*Section 366.26 and Section 388*

The social worker filed a section 366.26 report on July 29, 2014. The social worker recommended that the permanent plan for the child be adoption, but that the section 366.26 hearing be continued for 120 days, in order to allow the adoption worker to complete the necessary adoption assessment and procedures. The social worker reported that the child was transitioned to the concurrent adoptive home of Mrs. C. on July 11, 2014. The court continued the matter to September 10, 2014.

On September 5, 2014, father filed a section 388 petition requesting the court to grant him visitation and six months of reunification services. Rather than specifying the changed circumstances and best interest of the child on the section 388 form, father filed an attachment with his petition. In the attachment, he stated that, at the time of A.G.'s injuries, he was 17 years old. He alleged that, although he did not receive services, he immediately enrolled in various programs, and he completed a parenting program. He alleged that he had also seen a psychiatrist[5] and included a letter, in which the therapist stated that father had attended 12 sessions. The therapist said that father was assessed for mental health problems, but did not have any. He described father as polite and "at times somewhat childlike." The therapist opined that the injuries to A.G. may have been

_____

[5] Although father alleges that he saw a psychiatrist, the letter attached to his section 388 petition reflects that the person he saw was a licensed clinical social worker.

caused accidentally, with no intent on father's part. The therapist stated that the goals of their sessions were for father to accept responsibility for the incident, reduce the chance of harming a child when he is angry, and help father cope with bereavement. He opined that father achieved all goals. Father additionally alleged that, immediately following the injuries to the child, he got a job working 40-50 hours per week. Since then, however, he switched to part-time employment, and he registered for high school to complete the 12th grade. Father concluded that he initiated and completed services "to demonstrate his acceptance of what occurred." He alleged that he has demonstrated his maturity by working, reenrolling in school, and utilizing community resources to deal with his problems. Father stated his belief that he should be given the opportunity to reunify with his daughter.

On September 5, 2014, the court summarily denied father's petition because his request did not state new evidence or a change of circumstances, and the proposed change of order did not promote the best interest of the child.

On September 8, 2014, the social worker filed an addendum report and recommended that parental rights be terminated and the permanent plan of adoption be implemented. The prospective adoptive parents, Ms. C. and her partner Mr. G., were very eager to move forward with the adoption. They loved the child as their own and said they would be devastated if she had to leave. The social worker visited the family's home and opined that the child was thriving in the family's care, and that they were able

7

to meet her needs on a permanent basis. The child would be able to grow up with her half-sibling, who also resided in the home.

On September 10, 2014, the court held a contested section 366.26 hearing. The court noted that it had read and considered all the reports submitted. The court found it likely that the child would be adopted, and it terminated parental rights.

ANALYSIS

The Court Properly Denied Father's Section 388 Petition

Father argues that the court erred in summarily denying his section 388 petition. He claims that he should have been granted an evidentiary hearing since he made the requisite prima facie showing of changed circumstances. We conclude that the court properly denied his section 388 petition.

A. *The Court Did Not Abuse its Discretion*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request. [Citation.] [¶] However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the

8

petition. [Citations.]" (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) We note that "[a]fter the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interest of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).)

Father's section 388 petition sought the provision of reunification services and visitation. The juvenile court did not abuse its discretion in denying the petition, as father was unable to demonstrate that a changed order was in the best interest of the child. "[A] primary consideration in determining the child's best interest is the goal of assuring stability and continuity." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) For best interest of the child, father's petition did not actually allege anything. His petition only alleged his changed circumstances, including that he completed a parenting program on his own, saw a psychiatrist, got a job, and reenrolled in high school. He alleged that he had always accepted responsibility for his actions and that his conduct "appeared to be a reaction to [his] relationship with the mother and not directed at [the child's] sister." Father

9

reiterates his position on appeal by stating that the child came into the system because of her half-sister's injuries, that he "took responsibility for the environment that precipitated [her injuries]," that he admitted he was frustrated with mother when he injured A.G., and that he allegedly expressed "extreme remorse for his behavior." In his reply brief, father states that he is not asking for custody now, but he is just asking for "a chance for him to be a father to his daughter through court ordered reunification services." He then simply concludes that "[t]his result is in [the child's] best interest." While we acknowledge that father's circumstances had changed, he clearly failed to allege *how* it would be in the child's best interest to give him services, with the eventual goal of reunification. Father claims he only had to make a prima facie showing of changed circumstances to trigger the right to a full hearing. However, father is not correct. He was required to make a prima facie showing that changed circumstances existed *and* "that the proposed change would promote the best interests of the child." (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.) He failed to do so.

Furthermore, we note that the juvenile court properly recognized the shift of focus from the parent's interest in the care and custody of the child to the child's need for permanency and stability. (*Stephanie M*., *supra*, 7 Cal.4th at p. 317.) The child had lived in a stable home environment with her current caregivers since July 11, 2014. Although the child had only lived with them for approximately two months by the time of the section 388 petition, she had been visiting their home since May 11, 2014, because A.G. lived there. The caregivers were very attached to the child and loved her as their own.

10

The family was meeting all of her needs, and she was thriving in their care. The caregivers felt strongly that the child and her half-sister should be kept together, so they were eager to adopt the child.

We conclude the court properly determined that father had not carried his burden of proof and denied his section 388 petition. We note father's additional contention that because the trial court erred in summarily denying his section 388 petition, the judgment terminating his parental rights should be reversed as well. In light of our determination *ante*, we need not address this contention.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST          
                                                                                        J.

We concur:

RAMIREZ          
                    P. J.

McKINSTER          
                    J.